UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Dawn Dellapa,

    Plaintiff,

v.                                                      CASE NO. 8:25-cv-00859-SDM-AEP

Major League Baseball Players Benefit Plan et al,

    Defendants.
_____/

## ORDER

Alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), Dawn Dellapa sues (Doc. 1) the Major League Baseball Players Benefit Plan (the Plan) and the Pension Committee of the Major League Baseball Players Benefit Plan (the Committee). The defendants move (Doc. 24) to dismiss the complaint under Rule 12(b)(6), Federal Rules of Civil Procedure. The plaintiff responds (Doc. 32), and the defendants reply. (Doc. 37)

### BACKGROUND

Dellapa married former professional baseball player Thomas Leo Browning seven weeks before he died in December 2022.[1] (Doc. 1 at ¶¶ 1, 22-23) From his retirement from Major League Baseball in 1996 until his death, Browning received a "pension benefit" from the Plan. (Doc. 1 at ¶¶ 19-20, 24) After Browning's death,

---

[1] They married on October 31, 2022; Browning died on December 19, 2022.

Dellapa applied for a "Surviving Spouse Pension Benefit." (Doc. 1 at ¶ 42) The Committee denied both Dellapa's initial application and her appeal because she was "not married [to Browning] for at least one continuous year prior to [his] death" or otherwise eligible for benefits as a surviving spouse. (Doc. 24-3)

The Committee based the adjudication on the following provision of the MLB Players Benefit Plan Document:

> **27.51 Qualified Spouse**
> (a) A 'Qualified Spouse' is a Spouse who survives after the death of the Member and may be either:
>   (i) Married to an Active Member, an Inactive Vested Member, or a Retired Member in Active Service . . . on the date of the Member's death;[2]
>   (ii) Married to a Retired Member on the date of the Member's death and for a continuous period of at least one year ending on the date of the Member's death;[3]
>   (iii) An Alternate Payee; or[4]
>   (iv) A spouse or former spouse who was married to a Member on the date on which benefit payments from the Pension Plan actually commenced . . ..[5]

(Doc. 24-1)

The Plan provides that "[t]he Pension Committee shall have the exclusive right, power, and authority, in its sole and absolute discretion, to . . . interpret the

---

[2] Dellapa admits that Browning was a "Retired Member" at the time they married, rendering paragraph (i) inapplicable.

[3] As noted, Dellapa was married to Browning for only seven weeks before he died, rendering paragraph (ii) inapplicable.

[4] Dellapa does not allege that she qualifies as an Alternate Payee, rendering paragraph (iii) inapplicable.

[5] Browning's Pension Plan commenced years before his marriage to Dellapa, rendering paragraph (iv) inapplicable.

Plan . . . [and to r]esolve and/or clarify any ambiguities, inconsistencies, and omissions arising under the Plan or other Plan documents." (Doc. 1 at ¶ 8; Doc. 24-2)

Having exhausted her administrative remedies, Dellapa sues under ERISA[6] to enforce the Plan and recover benefits allegedly due her as a "Qualified Spouse." Alternatively, Dellapa claims that the comparatively stringent standard for surviving spouses of Retired Members[7] amounts to age discrimination because Retired Members tend to be older. She seeks to enjoin the Committee's enforcement of the one-year marriage minimum as a violation of ERISA's anti-discrimination provision.[8]

## DISCUSSION

Rule 12(b)(6), Federal Rules of Civil Procedure, permits dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, resolving a Rule 12(b)(6) motion can include determining whether a plan administrator's decisions were "correct or reasonable" under ERISA, particularly if the claim depends on the application of plain language. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011); *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1206 (11th Cir. 2020).

---

[6] 29 U.S.C. § 1132(a)(1)(B).

[7] That is, the surviving spouses of Active Members and Retired Members in Active Service are entitled to pension benefits regardless of the length of marriage.

[8] 29 U.S.C. §1140.

**Dellapa's Benefit Denial Claim**

The Eleventh Circuit employs a six-step process when reviewing challenges to a pension plan administrator's decision under section 502(a)(1)(B) of ERISA:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
(5) If there is no conflict, then end the inquiry and affirm the decision.
(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355.

Although she concedes that she fails to qualify under any of the four categories in subsection (a), Dellapa maintains this failure is "irrelevant" because of the supposedly permissive "may be." (Doc. 54 ¶ 1). She reasons that before 2020 the Plan defined a "Qualified Spouse" as one who "is" in any one of four categories, but the Committee amended the Plan to state that a Qualified Spouse "may be" in any one of four categories. (Doc. 1 ¶ 35). She argues the deletion of "is" and the addition of "may be" means that a Qualified Spouse is any "Spouse who survives after the

- 4 -

death of the Member" and that a Qualified Spouse also "may be" a spouse in any of the four categories.

This argument fails. Whether statutory or contractual, and absent some specially assigned meaning, a text applies in conformity with the plain meaning of the words. A sound application of the text favors the inclusion of every word and disfavors an application that renders a term superfluous. *See Harris v. Epoch Grp., L.C.*, 357 F.3d 822, 825 (8th Cir. 2004) ("'[An ERISA plan] should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.")

Here, the definition of Qualified Spouse begins with "may be either" and lists four carefully drawn categories. The specificity of the four categories strongly suggests that "may be" confines—rather than expands—the definition of Qualified Spouse. Paragraph 27.51(a)(2)(ii), which is especially instructive, requires not only that the spouse was married to a retired member at the date of death but also that the marriage have lasted "for a continuous period of at least one year ending on the date of the Member's death." This temporal precision would be pointless if merely illustrative. The durational requirement demonstrates that the four categories delimit, not merely suggest, who qualifies as a spouse beneficiary.

Stated differently, subsection 27.51(a)(2) already defines a Surviving Spouse as "a Spouse who survives after the death of a Member." If that clause were read as the only requirement, then the four enumerated categories in paragraphs 27.51(a)(2)(i)–(iv) would serve no purpose. Each of those provisions describes a spouse who

- 5 -

necessarily survives the member, yet they add distinct conditions that would be superfluous if survival alone sufficed.

Section 2.7 of the Plan vests the Committee with "the exclusive right, power, and authority, in its sole and absolute discretion, to administer, apply, and interpret the Plan." (Doc. 24-2). Thus, the decision is reviewed under the arbitrary-and-capricious standard, under which "[a]s long as a reasonable basis appears for [the] decision, it must be upheld . . . even if there is evidence that would support a contrary decision." *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989). For the reasons already explained, the Committee reasonably understood and applied the Plan. Because the complaint alleges no conflict of interest, the decision is affirmed at step five of the *Blankenship* factors.

### Dellapa's Discrimination Claim

Section 510 of ERISA prohibits "any person" from discriminating "against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. In other words, Section 510 "prohibits discrimination driven by a desire to retaliate against an employee or to deprive an employee of a right to which he or she may become entitled." *Owens v. Storehouse, Inc.*, 984 F.2d 394, 400 (11th Cir. 1993); see also *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997).

Although Section 510 protects beneficiaries from retaliation or interference, it does not provide a vehicle to challenge the terms of a plan itself, even if those terms have a disparate impact on older participants. "[S]ection 510 targets discriminatory conduct designed to interfere with the exercise or attainment of vested or other rights under the plan or ERISA. It does not broadly forbid all forms of discrimination." *Owens*, 984 F.2d at 398. Thus, even if Dellapa's allegation of facial age discrimination is accepted, Section 510 is inapplicable because Section 510 does not reach the design or terms of a plan's benefits.

## CONCLUSION

Because the defendants exercised reasonable discretion in interpreting the Plan's language and because the enforcement of the plan was non-discriminatory, the defendants' motion to dismiss is **GRANTED**. No later than October 21, 2025, Dellapa may submit an amended complaint.

ORDERED in Tampa, Florida, on September 30, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE